May it please the court. My name is Umber Qureshi. I am joined by my colleague Victoria Nielsen We are pro bono counselor a counsel for petitioner Anthony White. I will be addressing. Mr White's claim regarding asylum and withholding and Miss Nielsen will be addressing his claim for a deferral of removal under the Convention Against Torture At the outset your honors. We wanted to acknowledge that we are not proceeding on the removability Argument, which was section C in our opening brief Because mr. White has been removed to Jamaica at this point the relief that we were requesting Which was termination of proceedings is arguably moot and doesn't help them at this point Unless the court has any questions about that point I can start by addressing the agency's errors with respect to mr. White's asylum and withholding claim and I just ask you on that front then does the fact that he has been removed Render moot any of the other forms of relief that you're requesting and if not, why not? No, your honor the we're asking the courts to remand on the other claims We're asking this court to remand back to the agency So for example Well your honors for the asylum and withholding claim we have Four arguments one is that the BIA failed to apply the probable cause standard In addressing whether there are serious reasons to believe that mr. White committed a serious non-political crime it also Incorrectly concluded that the evidence here supports a probable cause finding or just a threshold question to follow up on what the judge Aged said and the answer may be yes, and if so, it's just my ignorance and I apologize The BIA grant asylum person who is outside the United States. Yes, your honor It can also remand back to the immigration judge No, I'm just focusing on whether the fact that he's not currently in the United States poses a problem for the BIA's theoretical ability No, your honor Very routine for individuals to continue their proceedings Thank you Your honors the government here was not held to its burden to show that there are serious reasons to believe that mr White committed a serious non-political crime the the BIA The IJ and even the government concede that serious reasons to believe the standard that is in the statute is equivalent to probable cause But your honors that that was not the standard applied in this case The IJ and BIA granted wrote that standard in their opinion, but they gave no reasons explanation or analysis of probable cause The sole footnote in the BIA's opinion acknowledging that the probable cause standard applies is not enough in addition to that If you have the evidence that was proposed for all the cause There is probable cause what else Well, your honor the agency here never actually analyzed the evidence Under a probable cause standard it failed to explain what probable cause is What is required to meet probable cause and instead? It's it's a little confusing from from the agency's opinion, but it appears what the BIA has done Paragraph reciting what everybody that's a first-year law student What I'm not understanding exactly what You're connecting all that to an error. Well your honor It needs to offer some reasoned explanation for its decision this in this court's recent opinion in Garcia Hernandez From last year the court addressed a similar issue where the BIA applied the incorrect Legal standard in determining a motion to reopen and in a footnote acknowledged That even under a different standard that it would be met which is exactly what the BIA did here saying that assuming Probable causes the standard we acknowledge that or we explicitly make a probable cause finding In Garcia Hernandez this court judge caught Obama explained that there are two problems with the BIA's conclusion first the BIA does not explain how or why the non-citizen fails to meet that standard and the BIA quote abuses its discretion when it fails to offer a reasoned explanation for its decision Distorts or disregards important aspects of the non-citizens claim. So here to the BIA committed both errors through failing to apply the probable cause standard Help me to understand this this case. You've got two arrest warrants Interpol notice Investigating officer report and Multiple press documents. I think your client was the one who introduced Why isn't that probable cause So your honor all of the evidence in this case actually turns on the reliability of yellow journalism Just one day after a sensationalist and homophobic article titled quote pervert pastor appeared in the Jamaica Observer Arrest warrants were issued for mr. White's arrest which formed the basis for the publication of the red notice against him Even DHS concedes in its brief to the BIA that the arrest warrants were quote based on information reported to news outlets And so the evidence used to find probable cause here a hinged on Tabloid articles that were one based on hearsay. They do not identify. Mr. White or the complainant by name They do not contain any basis to inform whether the Didn't he the one who introduced them your honor he introduced them for his claim to support his claim for the Convention Against Torture now for the asylum and Certainly your honor but for for probable cause It matters what the reliable whether the evidence is reliable and whether it is particularized with respect to the person So for the Convention Against Torture claim You know, even though the articles don't mention. Mr. White by name the broader public in Jamaica has associated these sensationalist articles to him and You know after the Jamaica Observer publicly outed him as gay He began to receive death threats But for the probable cause analysis as we've pointed out in addition to the issue of mr. White not being named in the articles You know, there's no basis for this court to examine whether the sources are trustworthy or inherently reliable they contain inflammatory language and they all come from a single unverified news source and This evidence is akin to You know evidence that the Supreme Court itself said in Illinois the gates was insufficient to support probable cause There the police department received an anonymous letter You know from from an individual You know that that stated exactly where a couple in in a particular neighborhood would go to buy drugs And the Supreme Court held that the letter provides virtually nothing from which one might conclude that it's others You know either honest your counsel. We'd like to hear from your co-counsel Thank you, Your Honor Thank you, Your Honors Quote I want you pilloried exposed blade insulted dragged across sharp razors Nails pulled out with hot tongue and whatever else comes with the full measure of the law for such acts and quote That's one of more than a hundred Threatening messages. Mr. White received after the Jamaica Observer articles were published in March 2020 that my colleague was just talking about whether or not you find that mr. White Committed whether or not you find the agency had serious reason to believe that mr. White committed serious non-political crime the BIA failed to Properly analyze his claim for deferral of removal under the Convention Against Torture Under this court's rules it the the court should the BIA should apply de novo review To the legal issues in the case and the BIA did not do that in this case instead it thoroughly Misinterpreted or misconstrued mr. White's primary argument before the immigration judge the BIA Acknowledged that in the BIA appeal mr. White said that the IJ had erred by focusing narrowly on whether the Jamaican buggery law Which is still on the books and criminalizes consensual sex between same-sex partners the BIA acknowledged that White argued that that was not the central part of his claim the central part of his claim is that he would be Tortured by community members and the and the government would acquiesce in that torture However the BIA never engaged with that argument instead just like the IJ it focused narrowly on the fact that the Department of State Human Rights report says the buggery law is not generally Enforced against consensual partners, but the BIA never addressed his central argument Which is that he would be tortured by community members First Jamaica remains one of the most homophobic countries in the world DHS itself Submitted a 2020 Department of State report by the Overseas Security Advisory Council that states quote their continued reports of serious discrimination and abuse against LGBTI individuals including assault corrective rape of women accused of being lesbians arbitrary detention mob attacks stabbings harassment by hospital and prison staff and blackmail and the 2020 Department of State Human Rights report Acknowledges that an IHIA and an Inter-American Commission on Human Rights report says that the buggery law serves to legitimize violence against LGBTI people Likewise that Mika's brief submitted by two of the leading LGBT rights organizations in the United States Lambda legal and immigration equality go into further detail about how the buggery law Serves as a as a way to legitimize the violence that happens against LGBT people All right on a general level. I hear you because I think that You you've made a pretty persuasive case that Jamaica is Unfortunately a homophobic society, but the problem is This particular case the element that disturbs me about it is the fact that there was a Molestation of a 14 year old boy and That That's that's the object that's that's the point of my concern and you painted a very interesting picture of The general conditions In Jamaica, and I don't I don't necessarily dispute that but look what but I Thought it might have been better if you'd taken those general conditions Down to the specific case and showed how with respect to the cap claim how this specific individual is likely to face torture or How How this plays out in the aspect of child molestation because it would be a different case for me if the Question didn't involve a 14 year old boy. Yes, your honor. I'm happy to respond to that in three ways first We've disputed throughout this case That that there was any molestation of this 14 year old boy. That was testimony But So second for deferral of removal against under the Convention Against Torture There is no discretionary element, even if it was even if there was a conviction from the Jamaican court, which there's not You must still consider whether or not it's more likely than not that he would be tortured in Jamaica you know if he wins deferral of removal under Convention Against Torture the United States government has the Option to continue to detain him in the United States if they find that he's a danger to the community So cat doesn't have it's not like asylum or with where there's any kind of discretionary element, but in terms of the Particularized torture fears in this case the one time that mr. White had any interaction with police in Jamaica when he was found kissing another man the Jamaican police threatened him with arrest Extorted him for money and when they but didn't the arrest warrants and the red notice they were fairly specific and I thought that they went to a particular incident identified time place of the incident and that that That that incident involved the 14 year old 14 year old boy That is what the warrants say, but as my colleague argued that we don't believe those warrants Have sufficient evidence in them. Mr. White is back in Jamaica That's a fair point, but but isn't that something for the IJ and BIA to resolve rather than for us Well, your honor the problem is that neither the IJ nor the BIA ever really considered. Mr. White central argument Which is that he would face torture from community members he received explicit graphic threats of torture after these Jamaica observer articles were published and at the time that he fled Jamaica because He heard there was a mob outside his house. He personally knew of gay people who had been stabbed stoned run over with a car So if there's that kind of animus against the you know General LGBT community imagine what the animus is like against someone who's used of child molestation Regardless of which country in the world you live in if Someone is accused of molesting a child family friends Appointments of that person aren't likely to take some revenge action I don't just seems to be not out of the ordinary in the human condition whether it's right or wrong First your honor, obviously we do not condone child molestation And as we've said we've vigorously argued throughout this case. He didn't do what he's accused of that being said the central yeah, but It seems like your argument here hinges on an event where he doesn't identify Never reported it to the police never sought assistance and It seems to take it out of the context of what happened because I could easily envision something very similar happening anywhere here when Someone's accused of molesting a child Well your honor Sexual concepts that make it different from other human experience Well first of all again under convention against torture unlike asylum the fear The fear of torture doesn't have to be tied to a protected characteristic in this case It is and because of the homophobia in Jamaica He's more at risk, but I think and I realized over time what sets this case apart from what you know Could happen in the United States is that the Jamaican government acquiesces and torture against LGBT people? It's very common for them to turn a blind eye to even be complicit in torture against LGBT people So it would not go to the police getting down again to specifics. I mean There's been no no instance of past torture and who specifically is going to do what? Well, who does it does somebody is there someone out there? That has a specific animus for this this gentleman this individual and who would acquiesce in it and He's never experienced Any physical mistreatment well your honor when he lived in Jamaica that was before he was outed as as a gay man I mean, it's outside the record, but we've heard that he's actually currently in the hospital But I'm still trying to supply the specifics who exactly has it doesn't a Well with the Animus toward this individual Who are we talking about well your honor? There's not a requirement that mr. White identify who the members of the mob outside would be helpful Your honor if you when when vice president Pence was hiding in the Capitol during the January 6th riot I don't think he knew who the members of the mob were but he knew that his life was at risk I don't think you have to identify Who the people are that are trying to harm you to understand that they're there to harm you All right, we try to give you some extra time and you also both of you have some time for rebuttal Good morning Like to quickly address the government it's not Does it go higher The government is not arguing that mr. White's removal has mooted his claims because his removal was involuntary and he also has a motionary open Ending with the Board of Immigration the general conditions in Jamaica for Her Gays are pretty bad Yes It's a pretty hostile environment We can see that there's certainly evidence in this record of significant discrimination against gay men that's evidence in the 2020 human rights report and 2018 human rights report which the immigration judge in the board considered and denying mr. White's claim but to receive deferral in a convention against torture It's not sufficient that mr. White demonstrate there's a culture of discrimination particular country needs to specify that it's more likely than not someone in that country in Jamaica would torture him with the acquiescence of a public official who would either participate or turn a blind eye to that action in in evaluating mr. White's probability of torture the immigration judge ultimately determined what was likely here Were that mr. White would face criminal prosecution for the 2018 buggery and indecent assault Convictions and that is what was likely to happen. Mr. White hasn't Alleged anything that happened in jail or anything like that to establish who in particular Would torture him the immigration judge considered the fact that mr. White had had this experience with the police where they extorted him, but I think that almost cuts against mr White's claim because the police officers were extorting mr. White because they knew he was gay I go back to the asylum and withholding question and specifically the red notice issue and just figuring out what we do and don't have to decide So mr. White's lawyers represent the Department of Justice Quote does not consider a red notice alone to be a sufficient basis for an arrest Because it does not meet the requirements of the Fourth Amendment. Did does the department do you agree with that statement? I agree with that statement. I think it's reflected in Judge Nelson's opinion in Beelow the Soro where I think the Reliability and probity of the red notes corresponds with the underlying arrest. So the government is not asking us to hold that a red notice is Invariably sufficient in that if we were to address that question, we would actually say the answer is no Well, it's the mere fact that if that if literally the so so the government presents I realize this is sort of artificial and wouldn't happen but not in a hypothetical situation where the only evidence presented to the IJ is a red notice and there is no other evidence presented to the IJ about the Existence of the crime the government would say the IJ should not find the standard. Well, I think that's Barahona and Gonzales Castillo, and I think the way to I Think that just could meet its initial burden potentially with the red notice alone to put mr. White on notice, but then mr. White says that's wrong and you shouldn't trust it. So I think the way the way I've conceptualized it I think there's three buckets of asylum cases. Generally, there's bucket one Whether you meet the refugee definition you get asylum as a matter of discretion Bucket two is where DHS puts on some evidence to trigger the 1248.8 D Regulatory bond to shift the burden to mr. White to demonstrate the serious non-critical crime bar doesn't apply It's a very straightforward question, I'm the answer ought to be equally as straightforward No, your honor the red notice is not dispositive of itself It's simply one item of evidence. And in this case, it's one of a number of items of evidence So what this was a straightforward question and My colleague is indisputably, correct, and it's indisputably correct that DHS Doesn't regard it as as Dispositive so That in this case the DHS presented such a quantum of evidence to meet its initial burden that the court doesn't need to reach the exact issue Gonzalez Castillo, my only point was that it could be I think those cases Represent the fact that DHS can trigger its initial burden of proof And as your honor, we know if the only thing in the record is it's relevant but not dispositive, right? Right, and I think if at the end of the day all that was in the record was the red notice and it wasn't a Very detailed red notice that mr. White likely would meet his burden of proof and that's ultimately counterintuitive because DHS triggered the burden of proof But I think where that's all that was in the record. I think mr. White or non-citizen every button So that's that third bucket of cases be here As we've discussed that was a long way around the bar Why don't you move on that's your honor and so I think here our DHS easily satisfied its burden of Shifting the burden of proof to mr. White to demonstrate that there were not serious reasons for believing that he committed a grand decent assault We have two arrest warrants certified by Postal counsel says they did an adequate probable cause Analysis both the LJ and the VA. So why do you say they did? Well, I think the the board in this decision recognized cited matter of any VA and recognized that the ultimate burden of proof here is a probable cause standard and the immigration judge thoroughly discussed the reasons why DHS met that initial burden here in conjunction with the two Warrants are the interpol red notice, which mr. White does not contest identifying him with specificity There is mr. White's affidavit testimony that These instances occurred and he was accused of this crime Of course, he has a mitigating Or An alibi defense that basically he was framed by jr's family for these offenses and then in addition there are the four Jamaica Observer articles that detail Reasons why the JCF did not obtain warrants until after mr. White by the country and that's because jr Didn't make a statement to report a statement to the police which would enable them to get an arrest warrant until January 18th of 2020 and so Together that evidence was sufficient To provide the serious reasons to believe that mr. White had committed these offenses not to mention This isn't like it's like Gonzales Castillo or Barahona where the non-citizen You know outright denies the allegations here. Mr. White concedes that he knew The victim jr that jr would go over to his house. So this is a case where This didn't come out of the blue as the agency found Mr. White's testimony was consistent with someone who had an opportunity to commit the type offenses that are detailed In the arrest warrants and mr. White can't rebut the presumption of serious non-critical crime bar applies because the agency Credited all of this other evidence that we've discussed over His self-serving testimony that on January 8th the jr's family after knowing him for years decided to extort him for money and after a fabricated story about how they made jr sister pregnant that they you know raised these allegations that he sexually assaulted jr and Mr. White has not identified any record evidence that compels a finding of credibility and this case Is like the Ninth Circuit's case in Villalobosura and that There the Ninth Circuit was considering an interpol red notice for murder with the underlying Salvadoran murder warrant. Villalobosura Conceded that he was the person named in the warrant so there wasn't a dispute that it might be this all might be about someone else and there the Immigration judge like here found that the allegations that Villalobosura engaged in this criminal conduct were more credible than his Denial and the immigration judge made an adverse credibility determination. And so I think that that's similar reasoning here. And I think it's the best analytical framework that the court can look to in resolving a Case like this where there are so much evidence to trigger the serious non-critical crime. Somewhat related to that Mr. White argues, as I understand it, that Yes, I introduced the deuce articles and yes, that's me they're talking about but I only introduced them so that they could be considered in the lane of the Convention Against Torture and the government was not free nor was the IJ and the BIA free to use that for any other purpose such as serious non-political crime. My response is that under 1229A when evidence comes into the record, the immigration, the fact finder can consider it. I don't know how the immigration judge is supposed to segregate out. You know, I can use this evidence for purpose A but not purpose B. I'm asking you a little bit about the cat claim because I will confess this is the area where I'm more troubled by the BIA and IJ's treatments. So your friend on the other side sort of began by reading a letter in which someone threatened to do something to Mr. White that sounds like... The other problem is that, right, the statute uses torture to mean two different things. It means doing the bad thing and then it means in a way that is the responsibility of the government. So when I say doing the bad thing, you know... So there's a letter that your friend on the other side read that sure sounds like a threat to do a bad thing that would be a qualifying bad thing under the cat, right? Again, how credible it is, but that's a threat to do something that the cat would define as conduct rising to the level of torture. Absolutely, that's right. Okay. And then the second requirement is it's not enough if a private person does the bad thing to you. The government has to be responsible either in the sense that the person who did it to you is a government agent or the government looks the other way and lets it happen, yada, yada, yada, right? And your friend on the other side essentially says that the BIA seems to make a category mistake. The BIA says, look, if he's sent back to Jamaica, the most likely thing to happen is that he's going to go through the criminal justice system in Jamaica. And the criminal justice system in Jamaica is generally okay, at least, and he'll be convicted or acquitted. But your friend on the other side said that doesn't really respond to the heart of his cat claim. The heart of his cat claim is not what the government will do to him directly. It's what private vigilantes will do to him directly and about which the government will then do nothing. And I will confess, I think at minimum, the BIA and IJ's treatment of that precise thing is a little skimpy. So would you like to try to convince me that they adequately considered that argument rather than responded to an argument he didn't really make? Yes, Your Honor. So I think, well, as a threshold matter, I think that the board adequately separated out the factual findings from the immigration judge. And the second paragraph in AR-11, where it's addressing the cat claim. Get a little closer. I'm sorry. I'm having trouble here. The second paragraph in AR-11 is where the board is reviewing de novo the legal aspects of Mr. White's conviction against torture claim. And I think that another point I would make is that if Mr. White cannot establish that it's more likely than not that he would be tortured, that's a threshold dispositive basis. When you say tortured, the bad thing. Yeah, the bad action. No, because you know, I'm sorry, the problem is the statute uses torture to mean two different things. It's like part A, but also the whole category. And it gets really confusing sometimes. Yes, Your Honor. So more likely than not to commit an action, torture or murder that would rise the level of harm under the convention against torture. And so to prevail here, Mr. White needs to show that that torturous action is more likely than not to occur and that a public official would acquiesce to it. And I think that I agree with you that the agency's acquiescence analysis here isn't extensive. But I think that that corresponds with the fact that the agency engaged in extensive analysis, prospective analysis. Doesn't our precedent suggest that you can't always equate doing nothing with acquiescence? I mean, let's take the United States. There are all sorts of heinous crimes that are committed in this country about which the government is like days ago or doesn't pursue with sufficient vigilance. And sometimes it doesn't do anything. But the fact that a crime is committed and the government does nothing, it doesn't mean that the government is acquiescing in its conduct. It may mean that it just has a lack of resources or it may mean that it doesn't have sufficient evidence or that it doesn't have sufficient clues or whatever. But there are unfortunately, sadly, a lot of crimes in a lot of countries, including our own, where the government is slow to act or does nothing. And I would not for a moment do I think that the government or anyone else is acquiescing. I'm asking you whether you have to have some affirmative act to demonstrate acquiescence or whether the acquiescence can be demonstrated by a sense of omission. I suppose it could be doing nothing could be acquiescence if something was committed, a flagrant crime was committed in the sight of government officials or right under the eyesight of government officials. But as a general matter, it's probably hard to equate inaction with acquiescence, although there might be situations in which the inaction was so flagrant given the government's notice that it was acquiesced. Right, Your Honor. I mean, the regulation 1208.18 that defines torture looks to the prior awareness of the public official of the action that constitutes torture. So the fact that the Jamaican government is unable to provide perfect protection to all of its citizens against all crimes is not sufficient for Mr. White to meet his burden. Well, but it's not all citizens for all crimes. This is where his country condition evidence comes in. It's that the government systematically doesn't enforce the laws that are designed to protect LGBTQ people. Right. That's what the country conditions evidence at least tends to suggest. I think I have to concede that there's certainly evidence of discrimination. So can I go back? You mentioned AR-11 and I'm glad you did. I pulled it up. So on AR-11, there's this carryover paragraph where the BIA is talking about this, the thing you and I discussed earlier, which is like, what's probably going to happen is he's going to go, he's going to be tried. Okay. And that we can see is not really responsive to his primary cat argument. So then there's this paragraph, the last substantive, that's the paragraph you're telling me where the BIA adequately addresses his actual cat argument. I think that's where the, yes. I mean, is there somewhere else where you're telling me? No, no, I don't think so. And so that, I mean, that to me, maybe this is enough because I know the standard review is, but these to me just sound like four conclusory statements in a row. Right. The IJ determined there was insufficient evidence of acquiescence. No explanation of why that is. The IJ also properly determined he could not establish each step in the hypothetical chain. No explanation. The IJ properly determined that assessing his fear of harm, at least directly as well as individuals, would harm him collectively, did not add to greater 50 percent. That's just another completely conclusory statement. Therefore, which is a little weird because these are just three conclusory statements in a row. Therefore, the IJ properly decide his request for deferral from the Wundercat. That is the sum total of the BIA's analysis responding to his actual argument. Well, and I, I concede it's not a model of learning. I think the argument that Mr. White raised in his administrative appeal brief focused on two articles, which is why we raised Natasha Coyne as to his reliance on other country commissions. I thought your point with respect to Judge Hyden's good comment was that the petitioner bears the burden of establishing non-acquiescence and that, I mean, of establishing acquiescence and that there isn't a record here that establishes acquiescence and I think that my good colleague is absolutely right that it may have been a very abbreviated treatment, but as to that point, the petitioner would bear the burden, would it not? He does bear the burden. And there's got to be some, something more before the fact finder. Of course, and that was where I was going with the administrative appeal brief. Mr. White references a shadow report to the United Nations in 2011 and quotes this sentence, but the sentence doesn't have any evidence. And I think that's fairly the theme of Mr. White's case here. It's still not clear to me who exactly in Jamaica, more likely than not, was tortured. Well, what do you say in response to your friend's January 6th hypothetical, which I thought was a little, I mean, it actually, I think it kind of works, right? Vice President Pence did not know who specifically was about to try to kill him, but does that really matter? If there's a mob of people at your door, does it matter that I can identify the members of the mob? I take the point. I think it's a good argument, but the evidence here is not sufficient to establish that there are mobs of this nature in Jamaica. Many of the, much of the evidence that Mr. White relies on, even if it's recently dated, like the article that references the case in the Inter-American Court on Human Rights. That's an individual who had lived in Canada for 13 years. So this is... Sure. I guess I'm just saying the fact that he can't name the name doesn't necessarily prevent it. No, I think if the human rights report said that every day a mob of people roams the street and kills someone, of course, I think that that would be a burden of proof. And the issue here is that Mr. White did not present that type of evidence here to meet his burden of demonstrating a public officialhood acquiesce on top of the fact that he has not laid out a chain of events where someone in Jamaica would be motivated to torture Mr. White. And I would just, before... Oh, your time is up. Thank you, Your Honor. Unless my colleagues have additional questions. Your time is up. Thank you, Your Honor. All right. Ms. Qureshi, you have some rebuttal time. Yes, Your Honor, and I'll try to be brief. Just a few quick points. The government mentioned the initial burden, and I think that's a very important point here. The IJ and BIA appeared to say that the government has a lower burden, that they don't have to show a probable cause. And that's why they shifted the burden on Mr. White. And that argument was squarely rejected by both the Eighth Circuit in Barahana and the Ninth Circuit in Gonzales Castillo, where the BIA made a similar legal error. And both courts looked at the statutory language and said it says serious reasons to believe. And that is why the government needs to show probable cause before the burden can be shifted back to... Are you saying that they didn't show probable cause or the government says it doesn't have to show probable cause? The government is saying it doesn't have to show probable cause, Your Honor. And that is what the IJ and BIA appear to have done. They cited the regulation and, you know, they cited a matter of WERB, which was overturned by Barahana. Even if that's what they said, and I'm not sure exactly, both the IJ and the BIA said, yeah, there's probable cause. Well, Your Honor, the BIA, again, acknowledged in a footnote that they make a probable cause finding. But again, the initial burden of proof should have been on the government to show probable cause. And the board and the IJ stated, well, the government, it doesn't have to show probable cause. That the burden is on Mr. White. Once DHS presents some evidence, then the burden is on Mr. White to prove by a preponderance of the evidence that probable cause is not met. And that is, again, I would point your honors to both Barahana and Gonzales Castillo, where the board made the same error. In regards to the actual, you know, probable cause finding, while this court can reverse on legal error alone based on the incorrect burden allocation, this court has to look at two things under Wilhelm, both the reliability of the evidence and the basis of knowledge. And Judge Wilkinson, in Torchinsky, you wrote that an arrest warrant does not mean it is per se proper or reliable. You need to look at what is the corroborating information that forms the basis of the arrest warrant. And here DHS has said that there are these, you know, inflammatory articles that were the basis of the arrest warrant. And Judge Eggie, we're not arguing that the observer articles can't be considered under probable cause, but simply that they do not need probable cause for all of the reasons that that we mentioned. I recognize that my time is coming to a close. I also just wanted to acknowledge both the due process arguments that Mr. White has raised, as well as the issue with credibility, in case this court has any questions. Thank you. Thank you so much. You have a question? That's the, I guess, one of the things that's troubled me about Mr. White's case here. This may be my misapprehension of it, but every case turns on context. The context of this case is that you have an individual in the position of authority, in the position of trust, who then is accused of abusing that position, or abusing that trust, and molesting a child. And it just seems like that that's, the thrust of that problem is just not something that Mr. White has addressed. A lot of other arguments that are more generic are more global societal problems. But in a case, it's the facts of that case. And the abuse of trust, the abuse of power, the molestation of a child, is what we have in this case. Your Honor, if I may respond, like my colleague Ms. Nielsen said, throughout the history of this case, Mr. White has vehemently denied those allegations, including denied the age of the complainant in the case. But again, Your Honor, I would point you to the probable cause standard here. You are looking at whether this evidence is sufficiently corroborated, is sufficiently reliable. And under this court's precedent and Supreme Court precedent, it clearly does not meet the probable cause standard. Thank you. I wanted to address a few of the questions that Your Honor's had for my colleague from DOJ. So first, Judge Wilkinson, you characterized the situation in Jamaica as potentially being that the government doesn't have the resources to control people, and no government is perfect. Of course, that's true. The legal standard isn't that a government must be perfect. It's do they acquiesce in the torture? So I wanted to point you to a couple of pieces of evidence in the record. One from the 2019 IAHCR International Inter-American Human Rights Commission ruling. It says at AR 387, quote, It also advised training for the police and security forces who have long been complicit in or perpetrators of violence and harassment against LGBT Jamaicans. And likewise, in the UNHCR shadow report at AR 546, it says, My colleague from DOJ faulted that report as coming from sources that are not cited, but that's the same thing that happens in the Department of State Human Rights Report, which has universally been found to be a reliable source. And that human rights report likewise says that the buggery law, quote, legitimizes violence against LGBT people. Judge Hyden, I also wanted to respond. You pointed out correctly, in my opinion, that this final paragraph in the Board of Immigration Appeals decision does nothing but state legal conclusions. And one of those legal conclusions that it states that that the immigration judge properly determined in assessing the fear of harm, that it wouldn't collectively add up to over 50 percent. Basically, the immigration judge decision as well at the AR 131 also just has a single sentence that says, Also, I'm aggregating the harm and it doesn't add up. So the analysis by the IJ that the BIA is relying on also doesn't exist. So that's also problematic. And then, Judge Ajay, I did want to address your point about, well, once you introduce the newspaper articles, they're in the record. You can't use them for one purpose and not the other. But the purpose they were introduced for was not for the truth of the matter asserted. We never believe that anything in those articles was true. The reason that they were introduced is to show that while Mr. White could safely lead a life as a closeted gay man before he left Jamaica, that cat is out of the bag. The whole world knows that he's gay now and that he's been accused of molesting an alleged minor. So the point of that article is not that this actually happened. It's that everybody in Jamaica believes that this happened, or at least it knows that he's been accused of these things. All right. Thank you.
judges: J. Harvie Wilkinson III, G. Steven Agee, Toby J. Heytens